UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
**JULIO PEGUERO-SANCHEZ**,                                       :
                                                                 :
                         Petitioner,    :  **MEMORANDUM DECISION AND**
                                                                 :  **ORDER**
       – against –                                    :
                                                                 :  18-CV-6320 (AMD)
**KATHLEEN GERBING**, *Superintendent*,                          :
                                                                 :
                        Respondent.   :
                                                                 :
---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

    The *pro se* petitioner, who has been released on parole, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] (ECF No. 1.) The petitioner was convicted after a jury trial of a felony—criminal possession of a controlled substance in the first degree (N.Y. Penal Law § 220.21(1))—and two traffic infractions—operating a motor vehicle without a rearview mirror (VTL § 375(10)(a)),[2] and having a defective license plate light (VTL § 375(2)(a)(4)). (ECF No. 16-8 at 2-12.)

    The petitioner argues that the state court should have suppressed the narcotics recovered from his car. (ECF No. 2 at 29-51.) He also argues that prosecutors used perjured testimony at his trial in violation of his Fifth and Fourteenth Amendment due process rights and his Sixth

---

[1] According to the New York State Department of Corrections and Community Supervision Inmate Lookup Database, the petitioner was released on parole from Otisville Correctional Facility on October 27, 2020. Inmate Population Information Search, NYSDOCCS, http://nysdoccslookup.doccs.ny.gov. Although the petitioner is no longer incarcerated, parole satisfies the "in custody" requirement of 28 U.S.C. § 2554(a). *See In re Dorvilier & Harry's Nursery Registry*, No. 16-CV-01765, 2017 WL 2377935, at *1 n.1 (E.D.N.Y. May 31, 2017). A petitioner satisfies the "in custody" requirement even after being discharged from parole if the petitioner was in custody at the time the habeas petition was filed. *See Nieves v. LaClair*, No. 14-CV-108, 2021 WL 2313184, at *6-8 (E.D.N.Y. June 7, 2021).

[2] The Appellate Division vacated this conviction on appeal. *See People v. Peguero-Sanchez*, 141 A.D.3d 608, 612 (2d Dep't 2016).

Amendment right to a fair trial, and that his trial and appellate lawyers were ineffective. (*Id.* at 52-67.) For the reasons explained below, his petition is denied.

## BACKGROUND[3]

**I.  Overview**

On November 10, 2011, an officer patrolling an Applebee's parking lot saw the petitioner sitting in his car, which did not have a working license plate light and was missing its rearview mirror. When the officer questioned the petitioner, he noticed a black plastic bag containing clear plastic bags of cocaine between the petitioner's feet. Later, the officer found another bag filled with cocaine.

The petitioner was charged with criminal possession of a controlled substance in the first degree, operating a motor vehicle without a rearview mirror, and having a defective license plate light. He went to trial before the Honorable William J. Condon and a jury on January 13, 2014, and was convicted of all counts. Judge Condon sentenced the petitioner to a prison term of ten years with five years of post-release supervision.[4]

**II.  *Mapp/Dunaway* Hearing**

Prior to trial, the defense moved to suppress the drugs found in the petitioner's car. On March 5 and July 9, 2013, Judge Condon held a *Mapp/Dunaway* hearing, at which Officer Thomas Janickey testified. (*See* ECF No. 16.)

Officer Janickey testified that on November 10, 2011, he was part of the Patrol Special Operations Team ("PSOT"), a unit focused on guns, narcotics and gangs. (*Id.* at 9-10, 80-81.) At around 7:00 p.m., he was patrolling the Applebee's parking lot, an area known for narcotics

---

[3] Because the petitioner was convicted, I summarize the facts in the light most favorable to the verdict. *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

[4] The petitioner was sentenced to time served for the traffic infractions. (ECF No. 16-8 at 36.)

2

activity. (*Id.* at 10-12.) Officer Janickey was wearing a black tactical vest with "police" in white lettering on the right chest and on the back. (*Id.* at 10-11, 34.) He also had his police badge around his neck. (*Id.* at 56.)

Less than a minute after he drove into the parking lot, Officer Janickey saw the petitioner sitting in the driver's seat of a parked and running 1995 BMW. (*Id.* at 12-13, 23.) The car did not have a working license plate light, and was missing its rearview mirror. (*Id.* at 12-13, 29.)

When Officer Janickey made eye contact with the petitioner, the petitioner "[threw] his seat back and attempt[ed] to lay low." (*Id.* at 14.) The officer parked his car without blocking the petitioner's car, and walked to the driver's side of the petitioner's car. (*Id.* at 21-22, 117.) He asked the petitioner what he was doing in the area, and the petitioner replied that he was meeting some friends at Applebee's. (*Id.* at 15, 39.) When Officer Janickey asked the petitioner for his license, the petitioner turned on the car's interior lights. (*Id.* at 17.) At that point, the officer saw an open plastic bag between the petitioner's feet; the bag contained "several clear plastic bags" of "white powder" and "a condensed powder substance." (*Id.* at 17-18, 46-47, 49, 73, 98-99, 102.) Officer Janickey asked the petitioner to step out of the car, and arrested him. (*Id.* at 18.) The officer then searched the car, and found a closed brown paper bag near the plastic bag; the brown bag also contained several clear plastic bags containing the same substance. (*Id.* at 19, 52-53.) Based on his training and experience, Officer Janickey believed that the substance was cocaine. (*Id.* at 20.) A lab test later confirmed that the substance contained cocaine. (*Id.* at 20-21.)

Judge Condon found that Officer Janickey's testimony was "credible" and "impress[ive]" "while being cross-examined by a highly competent defense attorney." (ECF No. 16-11 at 176-77.) The judge concluded that "[t]he intrusion into the [petitioner's] freedom was

minimal and authorized," that the officer's search was "reasonable under all the facts of the case," and "[t]he contraband was easily recognized in plain view." (*Id*.) Accordingly, he denied the motion to suppress.

### III.  The Trial

#### a.  The Prosecution's Case

The prosecution called three witnesses—Officer Thomas Janickey, Detective Ralph Rivera and forensic scientist Peter Tracy—and established the following facts.

Officer Janickey gave essentially the same testimony he gave at the hearing about seeing the petitioner's car in the Applebee's parking lot. (*See* ECF Nos. 16-4, 16-5.) He explained that the two traffic violations—the defective light and missing mirror—as well as the petitioner's suspicious behavior caused him to question the petitioner. (ECF No. 16-5 at 95.) The petitioner seemed "nervous" and "agitated," and was "moving his hands and legs around a lot." (ECF No. 16-4 at 37-38.) When Officer Janickey asked for his license, the petitioner turned on the interior lights, and retrieved his license from between the console and the gear shift. (*Id.* at 38; ECF No. 16-5 at 14, 33.) At that point, the officer saw an "open," "small, black plastic bag" between the petitioner's feet, "flat on the . . . floor;" inside the bag were "several clear bags containing [] large white rock substances." (ECF No. 16-4 at 39; ECF No. 16-5 at 34-36, 43.) The officer asked the petitioner to step out of the car, and handcuffed him. (ECF No. 16-4 at 52, 54)

After another officer arrived, Officer Janickey found another "brown lunch type bag" on the left side under the driver's seat with "three more large clear bags containing the same white, rock-like substance." (*Id.* at 57.) A field test established that the substances found in the petitioner's car contained cocaine, (ECF No. 16-4 at 60; ECF No. 16-6 at 13), and additional testing at Suffolk County Crime Laboratory's drug chemistry section confirmed the white

4

substance contained cocaine and totaled 10.6 ounces.  (ECF No. 16-6 at 67-68, 70.)[5]  Detective Rivera also requested that the black bag be tested for the presence of DNA: "[t]o either identify the [petitioner] or anybody else that may have touched that bag . . . [or] anybody that [the petitioner] may have been dealing with."  (*Id.* at 36-37.)  Joseph Galdi, the supervisor of the crime lab who testified for the defense, said that the biology section did not typically test for DNA in drug cases.  (*Id.* at 118-19.)

### b. The Defense's Case

The petitioner testified that on the evening of his arrest, he texted his girlfriend to make arrangements to meet at Applebee's.  (*Id.* at 161, 163, 173-74.)  When he got to the shopping center, he parked his car and walked toward the restaurant.  (*Id.* at 134.)  Officer Janickey blocked his path, and told the petitioner that he was a police officer, displaying his badge.  (*Id.* at 134-35, 149-51.)  He asked the petitioner what he was doing, and the petitioner said that he was going to eat.  (*Id.* at 134-35.)  The officer asked for the petitioner's license, which the petitioner handed to the officer.  (*Id.* at 135-36, 150-51.)  When the officer saw that the petitioner lived in Baldwin, he grabbed the petitioner's keys and told him to "[m]ove over here."  (*Id.* at 136.)  The petitioner asked why, and the officer replied, "You're not supposed to be over here . . . You know why?  Because you're locked up.  You're going to jail."  (*Id.* at 136-37.)

After the officer placed the petitioner in an unmarked police car, he took the petitioner's keys and phone, and searched the car and trunk.  (*Id.* at 137-38.)  The officer returned about 15 minutes later, and repeated, "You know why?  You're arrested."  (*Id.* at 138.)  Officer Janickey took the petitioner to the precinct, where Detective Rivera accused him of having drugs.  (*Id.* at

---

[5] About a year after the arrest, Officer Janickey went to take pictures of the BMW at the impound yard, and saw that the driver's seat was electronically operated.  (ECF No. 16-5 at 114, 118.)  A photograph taken on the evening of the arrest shows a rearview mirror in the pocket behind the passenger's seat.  (ECF No. 16-4 at 65-66.)

5

139.) The petitioner replied that he did not know what the detective was talking about. (*Id.*) Detective Rivera said he was going to do a DNA test and swabbed the petitioner's mouth. (*Id.* at 139-40.) According to the petitioner, he had no bags at his feet when he was arrested, and had never seen the black plastic bag or the brown paper bag before trial. (*Id.* at 144, 169-70.)

### IV. Rebuttal

The prosecution introduced the petitioner's text messages from before the arrest. (*See* ECF No. 16-7 at 2-4.) The day before his arrest, the petitioner texted someone named "Bb!!pul" and called him "little brother;" they planned to meet. (*Id.* at 75-76, 83-84.) When asked, "What do you have there," the petitioner responded, "I'll tell you personally." (*Id.* at 66.) The next day, they decided to meet at six in the evening, and the petitioner wrote, "I'm going to be arriving a little late." (*Id.* at 11, 74.)

### V. Verdict and Sentencing

The jury convicted the petitioner of criminal possession of a controlled substance in the first degree, operating a motor vehicle without a rearview mirror, and having a defective license plate light. (ECF No. 16-8 at 9-12.) Judge Condon sentenced the petitioner to ten years in prison with five years of post-release supervision. (*Id.* at 35.)

## PROCEDURAL HISTORY

### I. Direct Appeal

The petitioner, represented by counsel, appealed his conviction to the Appellate Division, Second Department. (*See* ECF No. 16-9 at 60-122.) The petitioner faulted the trial court's instructions to the jury on operating a car without a rearview mirror, and argued that the court should have suppressed the cocaine from the petitioner's car and precluded evidence of his text messages. (*Id.* at 87-95, 106-08.) The petitioner also argued that he was denied his right to due process when the detective testified that he requested DNA testing to determine whether the

6

petitioner or anyone he "may have been dealing with" touched the bag. (*Id.* at 104-05; ECF No. 16-6 at 37.) In addition, the petitioner claimed that the prosecutor, in summation, alluded to drug sales, suggesting that the petitioner was selling drugs. (ECF No. 16-9 at 96-116.) Finally, the petitioner argued that the trial judge denied him his right to confront Officer Janickey by precluding defense counsel from asking Officer Janickey why he issued the petitioner a ticket for not having a rearview mirror. (*Id.* at 117-21.)

The Appellate Division vacated the petitioner's conviction for violating VTL § 375(10)(a)—operating a car without a rearview mirror—because the indictment did not give the petitioner appropriate notice. *People v. Peguero-Sanchez*, 141 A.D.3d 608, 612 (2d Dep't 2016). The court otherwise affirmed the conviction, concluding that Officer Janickey had probable cause to search the petitioner's car, and that the petitioner's text messages were appropriate rebuttal evidence "to corroborate the nature of [the] conversation [between the petitioner and Officer Janickey] which the [petitioner], during his own testimony, had refuted." *Id.* at 610-11. The court also held that the detective's comment about someone the petitioner was "dealing with" was not an insinuation that the petitioner was selling drugs; rather, the detective "innocuously referred to the person from whom the [petitioner] allegedly obtained the bags of cocaine." *Id.* at 611-12. The Appellate Division found that the petitioner's complaints about the prosecutor's summation were unpreserved, and that, in any event, the summation was appropriate. *Id*.

One judge dissented, finding that the prosecution pursued an "undeniable theme of criminal *sale* of a controlled substance" by introducing the petitioner's text messages and referring to drug dealing. *Id.* at 613. The dissenting judge granted leave to appeal on October 17, 2016. (ECF No. 16-10 at 2.) The Court of Appeals affirmed the Appellate Division's

7

decision, concluding that "evidence of the [petitioner's] text messages was properly admitted to rebut [the petitioner's] version of the events," that the arguments concerning the summation were unpreserved, and that the prosecution did not improperly offer evidence of a drug sale. *People v. Peguero-Sanchez*, 29 N.Y.3d 965, 967 (2017).

## II.     440.10 Motion

The petitioner moved *pro se* to set aside his conviction pursuant to C.P.L. § 440.10, arguing that "the vehicle infractions . . . were inapplicable as the defendant's vehicle was legally parked," and that the cocaine in his car should have been suppressed. (ECF No. 16-11 at 5-30.) He also argued that his trial attorney was ineffective for not making this argument. (*Id.*) Judge Condon denied the motion, finding that the suppression claim was raised and decided on the petitioner's direct appeal. He also held that the petitioner could have raised his claims about the "inapplicability" of the traffic violations and his trial lawyer's performance on direct appeal, but did not. (*Id.* at 188-90 (citing C.P.L. §§ 440.10(2)(a), (c)).)

## III.    Coram Nobis Petition

On January 15, 2018, the petitioner filed a *pro se* petition for writ of coram nobis in the Appellate Division, Second Department, claiming that his appellate counsel was ineffective because he failed to argue: (i) that trial counsel was ineffective; (ii) that VTL § 375(2)(a)(4) was "inapplicable" and thus the officer lacked probable cause; and (iii) that Officer Janickey gave perjured testimony. (ECF No. 16-12 at 2-54.) The Appellate Division denied his petition, *People v. Peguero-Sanchez*, 163 A.D.3d 852 (2d Dep't 2018), and the Court of Appeals denied his application for leave to appeal, *People v. Peguero-Sanchez*, 32 N.Y.3d 1067 (2018).

## IV.     Habeas Corpus Petition

The petitioner filed a petition for a writ of habeas corpus on October 29, 2018. (ECF No. 1.) He challenges his VTL § 375(2)(a)(4) conviction—for the defective license plate light—and

8

argues that the trial judge should have suppressed the cocaine found in his car. He also argues that the prosecutor suborned perjury, and that his trial and appellate lawyers were ineffective.

## STANDARD OF REVIEW

A federal court reviewing a habeas petition must not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). That is true whether the state court's decision is based on substantive or procedural state law grounds. (*Id.* at 729-30.)

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to give deference to a state court's decision on the merits. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015).

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. (*Id.* at 412-13.) The court reviews the last reasoned state court decision. *Ylst v. Nunnemaker*,

501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A petitioner can seek federal habeas corpus relief only after he exhausts state court remedies and gives the state courts a fair and full opportunity to review the merits of the claim. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

## DISCUSSION

### I. VTL § 375(2)(a)(4)

VTL § 375(2)(a)(4) requires that vehicles "driven upon a public highway" have their rear license plate illuminated by a white light at night. The petitioner argues that this law is "inapplicable," because he was parked at the time the officer saw him, not driving; thus, he claims, Officer Janickey did not have reasonable suspicion to approach him. (ECF No. 2 at 29-39.)

The petitioner raised this claim for the first time in his 440.10 motion. (ECF No. 16-11 at 5-30.) Judge Condon denied the 440.10 motion and deemed the petitioner's claims either procedurally barred by C.P.L. § 440.10(2)(a)—barring collateral review to the extent issues were previously determined on the merits on direct appeal—or C.P.L. § 440.10(2)(c)—barring collateral review when the petitioner could have raised a claim on direct appeal, but did not. (*Id.* at 188-90.)

Federal courts are precluded from "review[ing] questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent

10

of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729). When a state court's decision is based on independent and adequate state grounds, the claim is "necessarily beyond the reach of federal *habeas corpus* review" unless the petitioner can establish either "cause and prejudice" from the procedural default or that failure to consider the claim would result in a "fundamental miscarriage of justice." *Brunson v. Tracy*, 378 F. Supp. 2d 100, 106 (E.D.N.Y. 2005) (citing *Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003) and *Coleman*, 501 U.S. at 750).

Courts in this circuit have held that a state court's reliance on C.P.L. § 440.10(2)(a) or C.P.L. § 440.10(2)(c) serves as an independent and adequate state procedural ground. *See Aparicio v. Artuz,* 269 F.3d 78, 93 (2d Cir. 2001) (C.P.L. § 440.10(2)(c)); *Chrysler*, 14 F. Supp. 3d at 453-54 (C.P.L. § 440.10(2)(a)). Therefore, the petitioner's claim is procedurally barred unless he establishes cause for the default and prejudice, or demonstrates "that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio*, 269 F.3d at 90 (citing *Coleman*, 501 U.S. at 753). The petitioner has not established any cause for the procedural default or that denying this claim would result in a miscarriage of justice.[6]

In any event, the petitioner's argument that Officer Janickey had no reason to approach him because VTL § 375(2)(a)(4) applies to only vehicles "driven upon a public highway" is meritless.[7] Officer Janickey saw the petitioner sitting in the driver's seat of a car that was parked and running, in a parking lot with two entrances that led directly to public highways, as defined

---

[6] In his reply, the petitioner blames his appellate counsel for failing to raise claims, including this one. (ECF No. 18 at 13.)

[7] VTL § 134 defines "public highway" as "[a]ny highway, road, street, avenue, alley, public place, public driveway or any other public way."

11

by VTL § 134. (*See* ECF No. 16 at 41-42.) Thus, it was reasonable to infer that the petitioner had operated his car on a public highway without having the rear license plate illuminated, before he drove into the parking lot. *See e.g.*, *United States v. Sandford*, No. 15-CR-6101, 2016 WL 3951217, at *3 (W.D.N.Y. July 19, 2016) (holding that the officer made a reasonable inference that a vehicle "got to its location at [a] gas pump by being driv[en] there on a public highway"); *People v. Fenger*, 68 A.D.3d 1441, 1443 (3d Dep't 2009) (holding that the totality of the circumstances, including that the defendant was unconscious in the driver's seat of "a running vehicle that moved when they tried to awaken him," as well as the odor of alcohol and the defendant's inability to stand, led to the reasonable inference that the defendant had driven while intoxicated, especially since there were no alcohol containers in the car); *but see People v. Larkin*, 90 N.Y.S.3d 814, 818 (N.Y. App. Term. 2018) (finding that the officer could not have made a reasonable inference that the driver operated a vehicle while intoxicated, when the driver was unconscious in the front seat of his car parked in a parking lot).

Moreover, the petitioner's car had no rearview mirror, which also gave Officer Janickey a basis to approach the petitioner. The VTL requires vehicles to be "equipped with adjustable interior mirrors." VTL § 375(10)(c). An officer may initiate a vehicle and traffic stop when he or she has probable cause to believe that the driver of an automobile has committed a traffic violation. *Whren v. United States*, 517 U.S. 806, 811 (1996); *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994). Accordingly, either or both violations provided the basis for the officer's reasonable suspicion.

**II.     Suppression of Evidence**

Next, the petitioner argues that the trial judge should have suppressed the cocaine because Officer Janickey had neither reasonable suspicion nor probable cause to search his car. (ECF No. 2 at 21-32.)

The petitioner made a similar claim on direct appeal to the Appellate Division, Second Department, but did not raise it to the Court of Appeals. (*See* ECF No. 16-9 at 91-95; ECF No. 16-10 at 3-19.) The petitioner also made the claim in his 440.10 motion, which Judge Condon denied. (ECF No. 16-11 at 188-90.) As explained above, the court's decision rested on an independent and adequate state procedural ground, and the petitioner has not established cause and prejudice or that denying the claim would result in a miscarriage of justice.

In any event, a petitioner generally cannot raise state court denials of suppression motions in a federal habeas proceeding. *Stone v. Powell*, 428 U.S. 465, 482 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnotes omitted)). Fourth Amendment claims in habeas petitions are cognizable only "if the state has provided no corrective procedures at all to redress the alleged [F]ourth [A]mendment violations," or "if the state has provided a corrective mechanism, but the [petitioner] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). "Federal habeas relief is unavailable even if the federal court might have reached a different result from the state court." *Turner v. Senkowski*, No. 97-CV-653, 2000 WL 575696, at *6 (W.D.N.Y. Feb. 17, 2000) (citing *Capellan*, 975 F.2d at 71).

The petitioner moved to suppress the cocaine seized from his car, and had a hearing on that motion. He challenged the trial court's decision on direct appeal, and the Appellate Division rejected his claim. Since the petitioner had a full and fair opportunity to litigate the suppression claim, it is not cognizable on federal habeas review. *See Blake v. Martuscello*, No. 10-CV-2570, 2013 WL 3456958, at *6 (E.D.N.Y. July 8, 2013) (collecting cases).

### III. Perjured Testimony

The petitioner argues that Officer Janickey's hearing and trial testimony conflicted with his grand jury testimony, and the prosecution knowingly used this allegedly perjured testimony to obtain a conviction. (ECF No. 2 at 52-59.)

The petitioner did not make this claim on direct appeal. Rather, he made it for the first time in his coram nobis petition to the Appellate Division. (*See* ECF No. 16-12 at 2-54.) To meet the exhaustion requirement under 28 U.S.C. § 2254(b), a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition. *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990) (per curiam). The petitioner did not raise this claim on direct appeal, and including it in the coram nobis petition does not satisfy the exhaustion requirement. *See Turner v. Artuz*, 262 F.3d 118, 123-24 (2d Cir. 2001) (holding underlying claims to ineffective appellate counsel claim could not be exhausted through coram nobis petition). Accordingly, this claim is procedurally defaulted because the petitioner no longer has remedies available in state court. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991); 28 U.S.C. §§ 2254(b)(1)(B), (c).

In any event, Officer Janickey's testimony was consistent. The petitioner contends that Officer Janickey admitted at the hearing that he saw the cocaine after he arrested the petitioner, contradicting his grand jury testimony that he saw controlled substances in plain view before he arrested the petitioner. (ECF No. 2 at 52-53; ECF No. 16 at 51-52.) However, the petitioner cites Officer Janickey's testimony about the brown paper bag that he found after the petitioner was arrested, not the black plastic bag. Officer Janickey testified consistently that he saw the black plastic bag in plain view before he arrested the petitioner.

14

IV.   **Ineffective Assistance of Trial Counsel**

The petitioner argues that his trial lawyer was ineffective because he did not argue that VTL § 375(2)(a)(4) was "inapplicable," or that Officer Janickey perjured himself. (ECF No. 2 at 60-67.)

The first time the petitioner raised this claim was in his 440.10 motion, which Judge Condon denied. (ECF No. 16-11 at 25-27.) The petitioner raised the issue again in his coram nobis petition. (ECF No. 16-12 at 7.) As explained above, neither establishes exhaustion, and the claim is procedurally barred.

Regardless, the claims have no merit. A petitioner claiming that his lawyer was ineffective must meet the two-pronged test articulated in *Strickland v. Washington*: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 694 (1984). The Supreme Court has advised that in state habeas petitions, this inquiry is "different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Rather, a state court must be granted a "deference and latitude that are not in operation when the case involves a review under the *Strickland* standard itself." *Id*. A federal court "must determine what arguments or theories supported, or . . . could have supported, the state court's decision," and must then determine "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* at 102. The standard was "meant" to be an exacting one; a state habeas petitioner must demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102-03.

15

Under the first prong of *Strickland*, "[a] convicted petitioner . . . must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. "[R]elief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy." *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986)).

To satisfy the second prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The level of prejudice the [petitioner] need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 693). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The petitioner has not established that his trial counsel's representation fell below an objective standard of reasonableness. Trial counsel made multiple applications to dismiss the rearview mirror charge, applications that the court denied. (*See* ECF No. 16-1 at 6-9; ECF No. 16-3 at 127-34; ECF No. 16-6 at 92-95; ECF No. 16-7 at 24-26, 118.) Moreover, as explained above, the petitioner's claims about VTL § 375(2)(a)(4) and Officer Janickey's allegedly perjured testimony are not persuasive. A trial lawyer is not ineffective when he decides not to

16

make meritless claims.[8] *Torres v. McGrath*, 407 F. Supp. 2d 551, 562 (S.D.N.Y. 2006) ("[F]ailure to make a meritless argument does not amount to ineffective assistance." (internal quotation marks and citation omitted)).[9]

## V. Ineffective Assistance of Appellate Counsel

In faulting his appellate lawyer's performance, the petitioner claims he should have made the VTL § 375(2)(a)(4) and perjury arguments, and argued that the petitioner's trial lawyer was ineffective. (ECF No. 2 at 60-67.)

The ineffective assistance of appellate counsel claim was adequately exhausted and is reviewable by this Court. The petitioner raised this claim for the first time through a coram nobis petition to the Appellate Division, Second Department. (*See* ECF No. 16-12 at 2-54.) The Appellate Division held that the petitioner failed to establish that he was denied effective assistance of counsel, citing *Jones v. Barnes*, 463 U.S. 745 (1983) and *People v. Stultz*, 2 N.Y.3d 277 (2004). (ECF No. 16-12 at 82.) The petitioner then applied for leave to appeal to the Court of Appeals, but was denied review. (*Id.* at 83-179, 190.) A coram nobis petition is the appropriate vehicle to raise an ineffective assistance of appellate counsel claim. *Cowan v. Artuz*, 96 F. Supp. 2d 298, 304 (S.D.N.Y. 2000).

However, as explained above, the petitioner's arguments have no merit, and thus, his lawyer was not ineffective. "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful"

---

[8] Judge Condon commended defense counsel and the prosecutor, observing that they "conducted themselves professionally with a very high level of jurisprudence." He described the petitioner's lawyer as the "A Team." (ECF No. 16-8 at 16, 36-37.)

[9] For the first time, the petitioner argues that Officer Janickey perjured himself when he testified that the petitioner threw his car seat back the night of the arrest, even though the seat reclined electrically. (*See* ECF No. 2 at 60-67; ECF No. 16 at 118-19; ECF No. 16-4 at 717-18; ECF No. 16-5 at 115-18.) Thus, the claim is not reviewable. In any event, the officer's testimony was consistent.

17

before the state's highest court. *Hemstreet v. Greiner*, 367 F.3d 135, 142 (2d Cir. 2004), *vacated on other grounds*, 378 F.3d 265 (2d Cir. 2004); *see also Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001) ("[The] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (internal quotation marks and citation omitted)). In other words, appellate counsel cannot be ineffective for failing to advance a meritless claim.

## CONCLUSION

The petition for writ of habeas corpus is denied in its entirety. The case is dismissed. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        January 3, 2022